UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PEOPLES GAS SYSTEM, a division of
Tampa Electric Company, a Florida
corporation

    Plaintiff,

v.                Case No: 2:18-cv-240-FtM-38CM

POSEN CONSTRUCTION, INC.,

    Defendant.
_____/

## **OPINION AND ORDER**[1]

   This matter comes before the Court[2] on Defendant Posen Construction, Inc.'s Motion to Dismiss the Complaint (Doc. 10) and Motion to Take Judicial Notice (Doc. 11) filed on February 27, 2018. After the Court granted Plaintiff Peoples Gas System's Unopposed Motion for Extension of Time to Respond (Docs. 14; 15), Plaintiff filed a Request for Judicial Notice (Doc. 16) and Response to Posen's Motion to Dismiss (Doc. 17) on March 27, 2018. These matters are now ripe for review.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] Plaintiff initially filed this action in the Middle District of Florida, Tampa Division. (Doc. 1). The Tampa Division later transferred the case to this Court because the factual allegations occurred in Fort Myers, Florida. (Docs. 18; 19; 20).

## BACKGROUND[3]

This is an action under Florida's Underground Facility Damage Prevention and Safety Act, Fla. Stat, §§ 556.101-106 (the "Act"). Peoples Gas System ("PGS") owns and maintains natural gas distribution facilities throughout Florida, including a natural gas pipeline in Lee County. (Doc. 1 at 2). Posen is a road construction contractor. (*Id.*). In 2009, the Lee County Board of County Commissioners solicited bids for a lane expansion/drainage system project in east Fort Myers, Florida. (*Id.* at 3). Posen submitted a bid and was awarded general contractor of the project. (*Id.* at 4). Construction began in August 2009. (*Id.*).

PGS maintained the pipeline underneath the project, which provided natural gas to Lee County residents. (*Id.*). This was a "critical line" and required caution when working around it. (*Id.*). PGS marked the pipeline with flags and paint and installed testing stations. (*Id.* at 5). As the project continued, the parties learned that, at certain locations, construction would be impossible unless PGS removed the pipeline ahead of Posen's work. (*Id.* at 4).

In October 2010, Posen submitted a request to Sunshine One, which is a notification system by which excavators obtain the location of underground utilities before excavating. (*Id.* at 8). Fla. Stat. § 556.101(2). PGS alleges that Posen's request violated the Act because it failed to describe the specific areas for excavation, as required by the statute. (*Id.* at 9). In November 2010, Posen's roadway superintendent, Greg Menuez,

---

[3] The Court presents the facts as alleged in PGS' Complaint. (Doc. 1). At this stage, the Court must accept the facts set forth in the Complaint as true. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006) (citation omitted); *see also Pellitteri v. Prine*, 776 F.3d 777, n. 1 (11th Cir. 2015). Therefore, because the Court takes PGS' factual allegations as true, the facts recited in this Order may not be the actual facts later proven.

directed his subordinate, Mark Santos, to dig and till the ground located at testing stations 452-456 with a Bomag mixer. (*Id.*). PGS alleges that Menuez knew that the gas main was not properly marked. (*Id.* at 9-10). When Santos operated the mixer, he struck and ruptured the pipeline, which caused a natural gas fire. (*Id.* at 10). Santos suffered severe injuries. (*Id.* at 10).

This incident triggered several years of litigation. First, in 2011, Santos sued PGS and Posen in Florida state court. (Docs. 1 at 12; 11-1). Several years later, Santos voluntarily dismissed Posen as a defendant to the action. (Doc. 11-3). In 2017, Santos and PGS ultimately settled. (Doc. 1 at 12). Around the same time Santos filed his state action, PGS sued Posen in federal court for the same incident, seeking damages for the cost to repair its pipeline and facilities under claims of negligence. (Doc. 11-4). In response, Posen filed counterclaims against PGS. (Doc. 16-1). The parties ultimately settled and stipulated for dismissal with prejudice. (Doc. 16-2).

Now, PGS sues Posen under § 556.106(2)(a) and makes an alternative claim for statutory indemnity under the Act. (Doc. 1). In essence, Posen asserts both counts are duplicative because, under both counts, PGS relies on the Act to receive the same remedy: indemnification for the settlement amount it paid to Santos (Docs. 1 at 12-13; 10 at 7). Posen moves to dismiss the complaint for failure to state a claim, and both parties move the Court to take judicial notice of court filings.[4] (Docs. 10; 11; 16). For the reasons set forth below, Posen's Motion to Dismiss (Doc. 10) is granted.

---

[4] In light of the Court's decision to grant Posen's Motion to Dismiss (Doc. 10), both parties' pending motions to take judicial notice (Docs. 11; 16) are denied as moot.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations as true and view them in a light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This preferential standard of review, however, does not permit all pleadings adorned with facts to survive to the next stage of litigation. The Supreme Court has been clear on this point – a district court should dismiss a claim where a party fails to plead facts that make the claim facially plausible. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is facially plausible when the court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

## DISCUSSION

Posen presents two arguments as grounds for dismissing both counts of the Complaint. (Doc. 10 at 6-13). First, it argues that the damage PGS seeks is not a "loss" under the statute. (*Id.* at 10-13). Second, it asserts there is no statutory right to indemnification under the Act. (*Id.* at 7-10). PGS avers that it has a right to indemnification under the broad language of the statute. (Doc. 17 at 12-14). For the reasons stated below, the Court agrees with Posen.

As a preliminary matter, Florida substantive law binds the Court on these state law issues. The Eleventh Circuit summarized the precedent:

> In rendering a decision based on state substantive law, a federal court must decide the case the way it appears the state's highest court would. Where the state's highest court has not spoken to an issue, a federal court must adhere to the

> decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.

*Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290 (11th Cir. 2001) (internal citation and quotations omitted)). The Court turns to Florida precedent to decide the issues before it.

The Act was enacted, in part, to "aid the public by preventing injury to persons or property and the interruption of services resulting from damage to an underground facility caused by excavation or demolition operations." § 556.101(3)(a). Excavators are required to notify member operators (utilities) of their activities so operators can identify the locations of their underground utility lines and prevent damage to their lines. *See* § 556.105. If damage occurs despite the lines being properly marked, the Act creates a rebuttable presumption of negligence and the excavator is liable "for the total sum of the losses to all member operators involved as those costs are normally computed." § 556.106(2)(a).

Here, the parties disagree on the definition of the words "losses" and "costs" under the statute. Unfortunately, these terms are not defined under the Act, and state and federal courts have grappled with their definitions. *Compare A & L Underground, Inc. v. City of Port Richey*, 732 So. 2d 480, 481 (Fla. 2d DCA 1999) (holding that the clear language of the statute allowed recovery "for the total cost of any loss," which included purely economic losses); with *Southland Const., Inc. v. Greater Orlando Aviation*, 860 So. 2d 1031, 1037 (Fla. 5th DCA 2003) (calling *A & L Underground, Inc.*, 732 So. 2d 480 into doubt and holding that the statutory language appears "at most to contemplate personal injury damages, out-of-pocket losses and economic losses that are confined to damage

5

to equipment" and, therefore, does not include "a remote and indirect insurance premium increase claim or attorney's fees[.]"); and *James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecommunications, Inc.*, 642 F. Supp. 2d 1318, 1328 (M.D. Fla. 2009) (holding that the Act does not provide a plaintiff "with any additional remedies or damages other than those available at Florida common law."). A review of the case law shows very few cases addressing the issue of damages under the Act and not a single case addressing the issue before the Court. Therefore, in assessing PGS' claim, the Court relies on principles of statutory interpretation.

"In matters of statutory construction . . . legislative intent is the polestar that guides the Court." *Jimenez v. State*, No. SC16-1976, 2018 WL 2050000, at *6 (Fla. May 3, 2018) (citing *Sch. Bd. of Palm Beach Cty. v. Survivors Chart Schs., Inc.*, 3 So. 3d 1220, 1232 (Fla. 2009)). "The plain meaning of the statute is always the starting point in statutory interpretation." *GTC, Inc. v. Edgar*, 967 So. 2d 781, 785 (Fla. 2007) (citing *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984)). "[I]f the meaning of the statute is clear then the Court's task goes no further than applying the plain language of the statute." *Id*. "However, if the language is unclear or ambiguous, then the Court applies rules of statutory construction to discern legislative intent." *Polite v. State*, 973 So. 2d 1107, 1111 (Fla. 2007).

Language is ambiguous if "reasonable persons can find different meanings in the same language." *Blanton v. City of Pinellas Park*, 887 So. 2d 1224, 1230 (Fla. 2004) (quoting *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992)). However, "the fact that appellate courts may differ with regard to the application of statutory provisions does not necessarily render a statute ambiguous." *Nettles v. State*, 850 So. 2d 487, 495 (Fla. 2003). "Likewise, the fact that the legislature may not have

anticipated a particular situation does not make the statute ambiguous." *Forsythe*, 604 So. 2d at 456. "Although virtually every English sentence contains some level of uncertainty, the rules of construction are reserved for cases in which a fair reading of the statute leaves the judiciary in genuine doubt about the correct application of the statute." *Fajardo v. State*, 805 So. 2d 961, 963-64 (Fla. 2d DCA 2001). "Such rules are useful only in the case of doubt and should never be used to create doubt, but to remove it." *Id.* at 964 (quoting *State v. Egan*, 287 So. 2d 1, 4 (Fla. 1973)). Because the statute is "sufficiently certain upon its face," the Court has "no basis to invoke the rules of construction." *Id.* Thus, the Court turns to the plain language of the statute.

Here, the Act provides that if an excavator is found liable, he "is liable for the total sum of the losses to all member operators involved as those costs are normally computed." § 556.106(2)(a). PGS contends that because the legislature has imposed liability under the statute "for the total sum of the losses" incurred, such total costs should include the amount PGS paid Santos to settle his claim for bodily injury in state court. (Doc. 17 at 12-14). *Id.* Notably, PGS has provided no authority to support its interpretation. Nonetheless, for the following reasons, the Court finds that PGS has failed to state a claim for relief because Posen had no duty to indemnify under the Act.

First, the statute provides liability for "costs" as they are "normally computed," such as losses of revenue and use. *Id.* A review of the statutory language shows that a claim for indemnity would not fit the plain meaning of a "normally computed" "cost." § 556.106(2)(a). Rather, the plain language appears to contemplate costs related to equipment damage or personal injury. *See A & L Underground, Inc.*, 732 So. 2d at 481 (finding the statue allowed recovery for delay and repair costs); *see also Southland*

*Const., Inc.*, 860 So. 2d at 1037-38 (holding that the plain language appeared "at most to contemplate personal injury damages, out-of-pocket losses and economic losses that are confined to damage to equipment."). And such a reading is consistent with the legislative intent to "[a]id the public by preventing injury to persons or property and the interruption of services resulting from damage to an underground facility caused by excavation or demolition operations." § 556.101(3)(a). Here, PGS neither claims a personal injury, nor a loss due to damaged equipment. A plain reading of the statute supports no claim for indemnification.

In addition, other sections of the Act do not support PGS' interpretation. PGS argues that because § 556.106(2)(c) provides liability for injuries, it can recover the amount it paid to Santos to settle his personal injury claim. (Doc. 17 at 12-14). However, PGS conflates a claim *for* personal injury with an indemnification claim *based* on a personal injury. Here, PGS is not claiming it suffered a personal injury as a result of Posen's breach of duty under the statute. Rather, it makes a claim for indemnity based on a previous personal injury suit. PGS interpretation mischaracterizes the statutory language. While the statute provides liability for bodily injuries, the plain language creates no duty to indemnify a member operator for money it paid during the settlement of a third-party bodily injury claim.

Last, the Court finds that PGS' interpretation of the statute would force it to infringe on the duties and powers of the Florida legislature. *See Hill v. Davis*, 70 So. 3d 572, 575 (Fla. 2011) ("Courts are without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be abrogation of legislative power.") (internal citations and

quotations omitted)). Here, the Florida legislature provided no language in the statute that created an obligation of indemnification.

The Court finds two Florida statutes illustrative here. First, under Fla. Stat. § 607.0850(3), the Florida legislature created an express statutory right to indemnification for corporate officers, directors, and employees who, acting in good faith, are sued as a representative of a corporation. There is no such express statutory language here. Second, there is no indirect language creating an obligation of indemnification, such as in Fla. Stat. § 30.2905, which provides: "Any such public or private employer of a deputy sheriff shall be responsible for the acts or omissions of the deputy sheriff while performing services for that employer while off duty, including workers' compensation benefits." *See Martinez v. Miami-Dade Cty.*, 975 F. Supp. 2d 1293, 1297 (S.D. Fla. 2013) (holding that, although not expressly stated, the language in Fla. Stat. § 30.2905 created an indirect right to statutory indemnification). Because the Act does not include express – or indirect – indemnification language, the Court cannot extend its express terms. *See Hill,* 80 So. 3d at 575. Thus, for the reasons stated, the Court finds the plain language of the Act includes no obligation of indemnification.

In sum, PGS seeks a remedy under the Act that does not exist based upon the plain language of the statute. Because Posen has met its burden of establishing that PGS has no right to indemnification under the Act, Counts I and II are dismissed.

Accordingly, it is now

**ORDERED:**

1. Defendant Posen Construction, Inc.'s Motion to Dismiss (Doc. 10) is **GRANTED**.

2. Plaintiff Peoples Gas System's Complaint (Doc. 1) is **DISMISSED** with prejudice.[5]

3. Defendant Post Construction, Inc.'s Motion to Take Judicial Notice (Doc. 11) and Plaintiff Peoples Gas System's Request to Take Judicial Notice (Doc. 16) are **DENIED** as moot.

4. The Clerk is directed to enter judgment terminate all pending motions and deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 26th day of June, 2018.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

---

[5] "A district court need not . . . allow an amendment . . . where [such] an amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Here, there is no indication that PGS can state a valid claim. Since the Court is convinced that any further efforts in this case will be futile, it will not afford PGS an opportunity to amend. Accordingly, the Court dismisses this action with prejudice.